FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 25 2016

JAMES N. HATTEN, CLERK
By:
                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EPHREN TAYLOR II, )
Petitioner, )
)
)
VS. )  Case No. 1:14-CR-217-1-WSD
)
)
UNITED STATES OF AMERICA, )
Respondent. )

## MOTION FOR RULE 35

COMES NOW, EPHREN TAYLOR II, respectfully files before the District Court, Pro-Se, motion for a Rule 35, before the Court, based upon the following facts argued before the district court.

### STATEMENT OF THE CASE

Petitioner Taylor II, was named in each fifteen counts of Criminal Indictment before the U.S. District Court, for the District of Georgia, on June 10, 2014, Count One charged that beginning on a date unknown, but not later than in or about April 2009, and continuing to in or about October 2010, in Northern District of Georgia and elsewhere, did knowingly and willfully conspire with each other, and other, and with other persons known and unknown, to commit certain offenses against the United States, to wit:

To divise and intend to divise a scheme and artifice to defaud investors, and obtain their money and property by making materially false and fraudulent pretenses, representations.

On October 8, 2014, petitioner Ephren II entered a written, negotiated plea of guilty to Count One of the Criminal Indictment pursuant to Fed.R.Crim.P. §11(c)(1)(C) before the Honorable William S. Duffey.

On March 17, 2015, petitioner Ephren II was sentence before the district court to the United States Bureau of Prisons to 235, months.

**TAYLOR II CLAIM FOR RELIEF PURSUANT TO
§5K1.1, AND RULE 35 IS APPLICABLE TO
PETITIONER CASE PURSUANT TO SAID
STATED STATUTE AND GUIDELINE**

Petitioner Taylor II, contends that under Fed.R.Crim.P. §35, and pursuant to the United States Sentencing Guidelines, Taylor II is entitled to before the district court the following relief.

From the very beginning of Taylor II arrest, he immediately begin to cooperate with the Government/Respondent, see Sen.Tr.p. sec. 19-25, p. 48, sec. 21-25., p. 49, sec. 1-6.

The records established before the court that Taylor II, has openly accepted responsibility for the crime that he plead guilty to, and provided relevant information before Government/Respondent office which had lead to further investigations and convictions that was the direct result of Taylor II willful cooperation of the overall crime committed and each individual that played a role in the illegal activity.

-2-

At petitioner Taylor II, sentencing hearing the court never acknowledge Taylor II's cooperation, never considered the downward departure from the sentencing guidelines pursuant to §5K1.1, or [any], other mitigation factors that was in fact applicable to petitioner Taylor II case before the district court.

Petitioner Taylor II cooperated with the Security Exchange Commission in New York, N.Y., in regards to the IRA rollover trust that was part of the illegal activity. Taylor II provided numerous documents to the SEC, with open agreement to further his cooperation. When considering a downward departure for substantial assistance under §5K1.1, a sentencing judge must not only conduct a qualitative case by case analysis but also must expressly indicate its recognition of §5K1.1 factors, and district court mimimally satisfied this standard by considering government's extensive presentation of defendant's substantial assistance. See Unit United States V. Torres, 251 F. 3d 138, (2001).

In addition petitioner Taylor II, respectfully argues before the court, under §5K1.1, defendant may receive downward departure in sentencing for providing substantial assistance to authorities and the provision does not axiomatically require sentence enhancement for falling to assist authorities. Taylor II contends that the Government/Respondent never addressed Taylor II cooperation before their office, therefore, the court never was afforded an opportunity to make, a [qualitative case by case analysis], of petitioner Taylor II's cooperation before the court.

U.S.S.G. §5K1.1. is only section of the Sentencing Guidelines that allows downward departure from statutorily required minimum sentence. See United States V. Bullard, 390 F. 3d 413, (2004). Petitioner Taylor II, further, argues before the court, under §3553(c), a sentencing judge must explain his or her reasons for imposing a particular sentence, when a sentence is outside the Guidelines range, 3553(c)(2) adds additional obligation. It requires a sentencing judge to justify explicitly his or her decision to depart. Reducing a sentence under §5K1.1 falls under §3553(c)(2)'s more stringent provision, because it permits a sentencing judge to depart from the Guidelines range based upon a defendant's substantial assistance.

    In addition to the Sentencing Reform Act and the Guidelines, relevant caselaw requires an individualize, qualitative analysis within and outside the context of §5K1.1. In United States V. Thompson, 483 2d 527 (3d Cir. 1973), a judge announced that he sentenced all those convicted of violations of Selective Service law to at least thirty months in jail no matter how "good they were." The First Circuit Court of Appeals held that it was impermissible for a sentencing judge to employ a personal "sentencing policy." Taylor II contends that a fixed view as to sentencing is inconsistent with the discretion vested in the trial judge he may fulfill his mandate to tailor the sentence imposed to the circumstances surrounding each individual defendant and frustrates the operation of those rules set up to effect such a result." More recently, in United States V. King, 53 F. 3d 589, 591 (3d Cir. 1995), the court rejected a District Court's use of a mechanical "sentencing practice." The court held that a district court must undertake an individualized, <u>case-by-case</u> consideration of the extent and quality of defendant's cooperation.

A district court may grant a downward departure under U.S.S.G. Section(s) §5K1.1 or reduce a sentence under Rule 35(b), the sentence reduction may be based only on factors to the defendant's substantial assistance. United States V. Aponte, 36 F. 3d 1050, 1052 (11th Cir. 1994); United States V. Chavarria-Herrara, 15 F. 3d 1033, 1037 (11th Cir. 1994) The court in Chavarria-Herrara, considered factors such as the defendant's first-time offender status and good prison behavior in reducing his sentence under Rule 35(b).

Petitioner Taylor II, submit to the court, [Exhibit A], a letter forward to the Honorable William S. Dffey Jr., detailing petitioner Taylor II cooperation in accordance with disciplinary action brought by FINRA, the Financial Industry Regulatory Authority. The records before the court will establish substantial assistance by petitioner Taylor II. Taylor II argues that the district court, pursuant to Rule35, that he was given an illegal sentence. Rule 35(a) states that: "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." The lower court, as the sentencing court, has jurisdiction to hear claims based on Rule 35, Rule 32, and 28 U.S.C. §2255.

WHEREFORE, based upon the stated arguments respectfully raised before this Honorable Court, petitioner Taylor II **pray** that the district court will [GRANT], his motion for Rule 35, based upon the factual arguments and claims rendered before the court, and include petitioner Taylor II motion as a supplemental brief to petitioner Taylor II's initial 28 U.S.C. §2255, which is discretionary before the court, and within the court's jurisdiction.

                                                       Respectfully submitted

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury as delineated in Title 28 U.S.C. §1746, that the foregoing is true and correct to the best of my knowledge and that a copy of this document has been provided to the adverse parties by U.S. mail first class postage prepaid and deposited in this institution's legal mailbox on this;

_____20th_____ day of ___April___ 2016

CLERK'S OFFICE OF U.S. DISTRICT COURT
75 Ted Turner Drive N.W.
Atlanta, GA. 30303


UNITED STATES ATTORNEY'S OFFICE
Assistant U.S. Attorney
Federal Courthouse Building
75 Ted Turner Drive N.W
Atlanta, Ga. 30303




Mr. Ephren Taylor II #26696-045
Federal Correction Institution
P.O. Box 7000
Texarkana, Texas 75505

-7-

MR. BRUNO: Your Honor, may I approach the podium?

THE COURT: You may.

MR. BRUNO: Your Honor, at the outset, I would respectfully submit that the Court impose a sentence that reflects a departure from the guideline range that was calculated today, Your Honor, during the course of the sentencing hearing.

I would further submit that there are a number of factors that I would request that the Court consider when fashioning an ultimate sentence that is sufficient but not greater than necessary to comport with the sentencing goals delineated in Section 3553.

Your Honor, as my sentencing memo stated, Mr. Taylor fully appreciates the fact that his criminal conduct resulted in serious and widespread harm to numerous unsuspecting victims in this blatent scheme to defraud. He fully believes that his conduct was reprehensible and inexplicable.

I would submit, Your Honor, that I have been representing Mr. Taylor since 2012, and I can represent to the Court that since that point in time, he truly has exhibited an unwavering sense of accountability and acceptance of responsibility.

And I would also say, Your Honor, that since then, he's exhibited a sincere and deep-seated sense of shame and

1   remorse for the harm that he has caused these victims.
2           As Your Honor is aware -- his father just spoke --
3   Mr. Taylor still has the support of his family despite this
4   horrific conduct. He fully appreciates, though, Your Honor,
5   that this Court's sympathies lie with the plight of the
6   victims and their families and not with his situation or his
7   family.
8           There are a number of factors which I would ask the
9   Court to consider which demonstrate Mr. Taylor's desire to be
10  held accountable for his actions.
11          In 2012 when he first learned about the SEC's
12  parallel civil case, he immediately agreed to settle that
13  case without contesting a single legal or factual allegation,
14  and I believe from that point forward he began the process of
15  accepting responsibility for his conduct.
16          When Mr. Taylor learned about the pending
17  indictment, Your Honor, he immediately effectuated a
18  self-surrender, and he directed me to immediately contact the
19  government and tell them that he desired to plead guilty in
20  this case.
21          In addition, Your Honor, I would submit that his
22  acceptance can further be exhibited by his efforts, his
23  efforts to cooperate against a number of other culpable
24  participants in this scheme.
25          At the outset he attended a proffer session here in

1   the Northern District of Georgia and he fully detailed his
2   role and the role of others in this scheme.
3       He also attended a proffer session in the Eastern
4   District of New York which involved a major target who was
5   the focus of a number of government investigations in three
6   federal judicial districts.
7       He cooperated with the regulatory body FINRA
8   against an unscrupulous broker who sold the investments that
9   is the subject of this underlying indictment, and he also
10  helped established that that broker made misrepresentations
11  to the board.
12      And, Your Honor, I apologize, I submitted a letter
13  before we started.
14      THE COURT: I got that.
15      MR. BRUNO: I hope you had an opportunity to see
16  that.
17      Most importantly, Your Honor, Mr. Taylor cooperated
18  with the SEC in New York in regard to the IRA rollover trust
19  that was part -- that participated in the victimization of
20  the investors in this case.
21      He provided numerous documents to the SEC, and he
22  will continue to cooperate with the SEC, regardless of his
23  ultimate sentence here, with some small hope that funds can
24  be returned to investors.
25      I would say, Your Honor, candidly, during all his

E X H I B T   [A]



Financial Industry Regulatory Authority

Jonathan Golomb
Senior Special Counsel, Department of Enforcement
Direct Line: (301) 258-8532
Fax: (202) 721-8320

March 16, 2015

Hon. William S. Duffy, Jr.
U.S. District Court
Northern District of Georgia
c/o Jane Bruno, Esq.
10615 Judicial Drive, Ste 703
Fairfax, VA 22030

Re:   *United States v. Ephren Taylor*, 1:2014-CR-00217
       (*Dep't of Enforcement v. Brownlee*, Case No. 2013036217601)

Your Honor:

I am writing to advise the Court of the cooperation accorded by Ephren Taylor, II in connection with the above-referenced disciplinary action brought by FINRA, the Financial Industry Regulatory Authority.

Mr. Taylor's cooperation was extremely helpful. As a self-regulatory organization without subpoena power, FINRA is seldom able to obtain information or testimony from non-brokers in our disciplinary hearings. Having Mr. Taylor provide information through an interview, and his willingness to testify, were very useful in obtaining important evidence as to the role of an individual who made City Capital Corp. investments available to brokerage customers.

Mr. Taylor was interviewed by FINRA staff, and provided information that was helpful in allowing us to understand how the scheme operated, what the investors might have been told, and what the respondent in our case might have known. Due to his explanation, we were able to understand how the money ended up in the sweepstakes program when the customers thought it was being invested elsewhere. His information appears to have been truthful, being consistent with information we obtained from other sources.

Hon. William S. Duffy
March 16, 2015
Page 2

In addition to being interviewed, Mr. Taylor stood ready to be deposed at our convenience so that his testimony could be preserved for our upcoming hearing. This became unnecessary when defense counsel stipulated to certain important facts as a direct result of Mr. Taylor's cooperation. This has helped us establish significant elements which might have otherwise been problematic.

Sincerely,

Jonathan Golomb
Senior Special Counsel